IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JEFFERY S. NICHOLS | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:22-cv-1004 |
| | ) | Judge Trauger/Frensley |
| WILLIAM LEE, et al | ) | Jury Demand |
|     Defendants | ) | |

**REPORT AND RECOMMENDATION**

Pending before the Court is the Defendants' Partial Motion to Dismiss the Amended Complaint. Docket No. 21. Defendants have filed a supporting memorandum of law. Docket No. 22. Plaintiff has filed a response in opposition (Docket Nos. 25 and 26). For the reasons stated herein, the Defendants' motion should be **GRANTED IN PART AND DENIED IN PART**.

Also pending before the Court is the Plaintiff's Motion to Voluntarily Dismiss Claims G, H And I From the Amended Complaint as Moot. Docket No. 31. Plaintiff has filed a supporting memorandum of law (Docket No. 32) and Declaration (Docket No. 33). The undersigned recommends this motion be **GRANTED**.

**I.    BACKGROUND**

Plaintiff brings this action against the Defendants challenging Tennessee's Sex Offender and Violent Sex Offender Registration Verification and Trafficking Act of 2004 ("The Registration Act") and the Tennessee Serious and Violent Sexual Offender Monitoring Pilot Project Act ("the Monitoring Act") and the application of those acts to him. Docket No. 20. The application of these laws to him arise out of his June 2005, convictions for sexual offenses he committed between 2000 and 2002: rape of a child, aggravated sexual battery, sexual exploitation of a minor, and aggravated kidnapping. *Id.* Since the Plaintiff's release from custodial sentence on

August 2, 2022, Plaintiff has been subjected to requirements of the Registration and Monitoring Acts. *Id.*

Plaintiff's Amended Complaint asserts numerous claims in which he seeks relief from the registration requirements as a violent sexual offender against children, community supervision for life and required participation in a GPS monitoring program for violent sexual offenders. *Id.*

The Parties agree that the Plaintiff's Complaint raises ten (10) claims identified as claims A through J. Claim A asserts that the Registration Act violates the Ex Post Facto clause because the current act repealed the statute in effect at the time of his offenses. Docket No. 20, p. 3. Claim B asserts that the current Registration Act is punitive and violates his Ex Post Facto and Due Process rights. *Id.* at p. 5.

Claims C through F address Plaintiff's sentence of community supervision for life ("CSL"). *Id.* at pp. 10-26. Claim C asserts that CSL violates the Due Process Clause because the trial court failed to notify Plaintiff that was a part of his sentence prior to the entrance of a guilty plea. Claim D asserts that the sentence of CSL violates the Due Process Clause because the trial court amended Plaintiff's judgment to include CSL without his knowledge or consent. Claim E asserts that CSL violates the Due Process Clause because the Tennessee Supreme Court did not apply a decision of the Court retroactively to Plaintiff's case. Claim F asserts that CSL violates the Ex Post Facto Clause and Due Process Clause because the burdens of his sentence continually increased since the time of his offenses thereby violating his plea agreement.

Plaintiff's remaining claims (G-J), relate to the Monitoring Act. Claim G asserts that the Monitoring Act violates the Ex Post Facto Clause because the Act was not in effect at the time of his offenses. Docket No. 20, p. 26. Claim H asserts that the Monitoring Act violates the Due Process Clause because Tennessee Department of Correction rather than a judge implemented

monitoring for life. *Id.* at p. 27. Claim I asserts the Monitoring Act violates the Due Process Clause and the Eighth Amendment because there are "other equally effective methods of tracking offenders." *Id.* at p. 30. Finally, Claim J asserts that the cumulative effects of the Registry Law, CSL and GPS monitoring for life violates Plaintiff's constitutional rights. *Id.* at p. 33. Plaintiff seeks declaratory and injunctive relief in his Amended Complaint. *Id.* at pp. 33-34.

## II. LAW AND ANALYSIS

### A. Motions to Dismiss

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The Supreme Court has clarified the *Twombly* standard, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that pleads facts "'merely consistent with' defendant's liability . . . 'stops short of the line between possibility and plausibility' of 'entitlement to relief.'" *Id.*, *quoting Twombly*, 550 U.S. at 557 (internal brackets omitted).

When ruling on a defendant's motion to dismiss, the court must "construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F. 3d 1061, 1064 (6th Cir. 1994). The court should allow "a well-pleaded complaint [to] proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556. However, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id.* at 555.

"'[A] legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss," *Fritz v. Charter Twp. of Comstock*, 592 F. 3d 718, 722 (6th Cir. 2010) (citation omitted), and mere recitation of the elements of a cause of action "or an "unadorned, the-defendant-unlawfully-harmed-me accusation" will not do, *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. While the court must accept "as true all non-conclusory allegations in the complaint," *Delay v. Rosenthal Collins Grp., LLC*, 585 F. 3d 1003, 1005 (6th Cir. 2009), it does not have to accept unsupported legal conclusions, *Iqbal*, 556 U.S. at 678.

"Pro se complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtin*, 631 F. 3d 380, 383 (6th Cir. 2011) (internal quotation marks and citation omitted). Pro se litigants, however, are not exempt from the requirements of Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F. 2d 591, 594 (6th Cir. 1989). The Court is not required to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life. Ins. Co.*, 518 F. 2d 1167, 1169 (6th Cir. 1975); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("a court cannot create a claim which [a plaintiff] has not spelled out in his pleading") (internal quotation marks and citation omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's claim for her"). To demand otherwise would require the "courts to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F. 2d 1274, 1278 (4th Cir. 1985).

### B. Tennessee's Sex Offender Registry Laws

In 1994, Tennessee's first sex offender registry law (Sex Offender Registration and Monitoring Act ("SORMA"), was enacted. 1994 Tenn. Pub Act. Ch. 976. The Act required individuals convicted of any one of several identified sexual offenses to register, "unless the offender had been wholly released without supervision from incarceration, prohibition or parole prior to January 1, 1995. *Doe v Haslam,* 2017 WL 5187117, at *1 (M. D. Tenn. November 9, 2017). Thereafter, the General Assembly repeatedly amended SORMA to expand its scope, to increase the reporting requirements placed on registered offenders, and to reduce the level of confidentiality of registry information. *Id.* at *2.

In 2004, the Tennessee General Assembly repealed SORMA and replaced it with a similar but more stringent registration know as SORA. 2004 Tenn. Pub. Laws Ch. 921. SORA sets forth a plethora of registration and reporting requirements and provides that violation of these requirements are a felony (as opposed to a misdemeanor under SORMA). T C. A. §40-39-208. SORA likewise has been repeatedly revised and amended to increase its restrictions, requirements and to make more information publicly available about registrants. *Haslam*, 2017 WL 5187117, at *3.

Under Tennessee law, in addition to the punishment authorized by the specific statute prohibiting the conduct, individuals convicted of certain sex related offenses "shall receive a sentence of community supervision for life." T. C. A. § 39-13-524. That law states a "person on community supervision shall be under the jurisdiction, supervision and control of the department of correction in the same manner as a person under parole supervision." T. C. A. § 39-13-524(d)(1). By its own terms, "community supervision for life" has a "supervis[ory]" component that is "in the same manner as . . . parole." *Id.*

On July 1, 2004, the Tennessee Serious and Violent Sexual Offender Monitoring Pilot Project Act ("the Monitoring Act") likewise became effective. T. C. A. § 40-39-301 et seq. The Monitoring Act authorizes the Tennessee Board of Probation and Prole to subject a convicted sexual offender to a GPS monitoring program for the duration of his probation or parole. T. C. A. § 40-39-303.

### C. Defendants' Motion to Partially Dismiss Plaintiff's Amended Complaint

### 1. Sex Offender Registration Act

**Claim A: Ex Post Facto Claim**

In this claim, the Plaintiff asserts that the Registration Act violates the Ex Post Facto clause because the current version of the Act replaced an older version that was in effect at the time of his offenses. Docket No. 20, pp. 3-5. The Defendant argues this claim is distinguished from Plaintiff's Claim B which asserts an as applied challenge to the Registration Act and alleges that the new version is punitive. Absent any allegation that the Registration Act is punitive in support of Claim A, that claim should be dismissed for failure to state a claim. Docket No. 22, pp. 4-5. The Plaintiff responds that the Defendants "erred in their facts and legal reasoning." Docket No. 26, p. 3. Plaintiff contends that the 2004 Registration Act increases the punishment for offenses between 2000 to 2002, changing the conditions of the Plaintiff's plea agreement such that it is punitive. *Id.* The Parties offer no further argument or analysis.

Claims A & B appear to be two sides of the same coin. While Plaintiff's response to the motion to dismiss suggests that it is his intention to argue in Claim A that the Registration Act is punitive as applied to him, the plain language of the Amended Complaint does not support his assertion. As the Defendants note, the Amended Complaint does not include allegations that the Registration Act is punitive in support of claim A. Therefore, the undersigned recommends that

the motion to dismiss Claim A be **GRANTED**. However, to the extent that the Plaintiff intended Claim A to challenge the Registration Act as applied to him is punitive, Claim B properly asserts that claim and is not before the Court in the Defendants' motion. Therefore, dismissal of Claim A has little practical effect on the Plaintiff's action.

   2.   **Community Supervision for Life**

Plaintiff asserts three claims regarding his sentence of community supervision for life ("CSL"). These claims regard notice; the amendment of the judgments in his underlying criminal case; and retroactivity. Docket No. 20, pp. 10-16, Claims C through E. The Defendants argue that these claims are not properly brought before the Court under 42 U. S. C. § 1983. Docket No. 22, pp. 5-6. Instead, they argue that these claims which challenge the Plaintiff's sentence must be brought by Habeas Corpus petition and should therefore be dismissed. *Id.* The Defendants further argue that Plaintiff's Claims C through E call into question the validity of his community supervision for life sentence. *Id.* at p. 6. They note that the Plaintiff has in fact litigated this precise issue in post-conviction and habeas proceedings in state court. *Id.* (citations omitted). Because the Plaintiff has challenged his sentence, it is more appropriately brought in a petition seeking habeas relief and his §1983 claims should be dismissed. In response, Plaintiff asserts that he is not challenging the constitutionality of his sentence which he concedes would be properly brought through a habeas petition. Docket No. 26, p. 4. Instead, he asserts that he has been subjected to an additional non-custodial sentence by the Defendants "that mirrors the states' Sex Offender Registry" which "is egregious, extraordinary, and violates Plaintiff Nichols' Constitution (sic) Rights." Docket No. 26, p. 4.

Habeas Corpus "is the exclusive the remedy for a state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release," and therefore, claims

7

challenging conditions of confinement are not cognizable under 42 U. S. C. § 1983. *Heck v Humphrey*, 512 U. S. 477, 481 (1994).

In order for an individual to bring a claim for Habeas Corpus relief that individual must be "in custody" and the individual bears the burden of proving that they are in custody. *Broutt v. United States,* 858 F. 3d 425, 428 (6th Cir. 2017). Historically, "in custody" meant physical restraint or imprisonment. *Corridore v. Washington*, 71 F. 4th 491, 494 (6th Cir. 2023). However, the Supreme Court expanded the concept of "in custody" in *Jones v. Cunningham,* 371 U. S. 236, 242-3 (1963)(parole conditions place a paroled prisoner "in custody" for habeas purposes).

In the instant case, the Plaintiff asserts that he is no longer subject to a custodial sentence, parole or probation. Docket No. 26, pp. 16-17.

Defendants did not file a reply brief in this matter. As such, they do not address Plaintiff's contention that he is not in custody. Arguably, if the Plaintiff is not "in custody" there may be an exception to *Heck*. In fact, Plaintiff argues that this claim differs from *Heck v. Humphrey* in that it does not deal with Plaintiff's conviction or custodial sentence. Docket No. 26, p. 8. The Plaintiff however is incorrect.

As an initial matter, it is clear that the term of community supervision for life was in fact a part of the judgment entered by the trial court in the Plaintiff's underlying conviction. Docket No. 26, pp. 56-7. Further, the Sixth Circuit has recognized that community supervision qualified as a criminal justice sentence. *United States v. Barcus*, 892 F. 3d 228, 234 (6th Cir 2018). In *Barcus,* the court found that the community supervision for life statute states a "personal community supervision shall be under the jurisdiction, supervision and control of the Department of Correction in the same manner as a person under parole supervision." *Id. Citing* T. C. A. § 39-13-524(d)(1). Thus, community supervision for life has a component of supervision that is "in the same manner

8

Case 3:22-cv-01004    Document 34    Filed 08/11/23    Page 8 of 10 PageID #: 300

as . . .parole." *Id.*

Based on the foregoing, the Plaintiff is "in custody" for purposes of habeas relief and cannot argue impossibility as an exception to application of the *Heck* doctrine. Further, because the term of community supervision for life is in fact a term of the sentence imposed by the trial court, the Plaintiff's claims do constitute a direct challenge to the sentence in his case and call into question its validity therefore, the claims asserted are habeas corpus claims and not claims under 42 U. S. C. § 1983. As a result, the Defendants' motion to dismiss these claims should be **GRANTED**.

### 3. Monitoring Act Claims

Plaintiff's Claims G, H and I all deal with application of GPS ankle monitoring to the Plaintiff. Docket No. 20, pp. 26-31. Defendants have moved to dismiss each of those claims under Rule 12 (b)(6). Docket No. 22. The Plaintiff has filed a response in opposition to the motion. Docket No. 26.

On August 10, 2023, the Plaintiff filed a Motion to Voluntarily Dismiss Claims G, H and I from the Amended Complaint. Docket No. 31. The Plaintiff filed a supporting memorandum of law (Docket No. 32) and declaration (Docket No. 33). Plaintiff's motion seeks to voluntarily dismiss Claims G, H and I from the Amended Complaint as moot based upon the recent decision of the parole officer to remove GPS ankle monitoring from the Plaintiff. Docket No. 31. Plaintiff wishes to dismiss these claims because the monitoring requirement is no longer in effect as to him and has been removed as a condition of his supervision. *Id.*

As the condition of monitoring has been removed and Plaintiff wishes to dismiss these claims, the undersigned recommends that the Plaintiff's motion to dismiss Claims G, H and I (Docket No. 31) be granted. In light of the Plaintiff's dismissal of these claims, the Defendants'

motion to dismiss (Docket No. 22) should be **DENIED as MOOT** as to these claims.

## III. CONCLUSION

For the foregoing reasons, the undersigned recommends that the Defendants' motion to partially dismiss the Amended Complaint (Docket No. 21) be **GRANTED IN PART AND DENIED IN PART,** and that the Plaintiff's motion to voluntarily dismiss Claims G, H and I from the Amended Complaint (Docket No. 31) be **GRANTED**. Specifically, **Claims A, C, D, E, G, H and I** should be **DISMISSED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**