UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **JEFFREY S. NICHOLS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | Case No. 3:22-cv-01004 |
| ) | Judge Aleta A. Trauger |
| **WILLIAM LEE, in his capacity as** ) | |
| **Governor of the State of Tennessee,** ) | |
| **DAVID RAUSCH, in his capacity as** ) | |
| **Director of the Tennessee Bureau of** ) | |
| **Investigation, and FRANK STRADA, in** ) | |
| **her capacity as Commissioner of the** ) | |
| **Tennessee Department of Correction,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM & ORDER

Plaintiff Jeffrey S. Nichols has filed a Motion for Preliminary Injunction (Doc. No. 2), to which defendants Governor William Lee, Director David Rausch, and Commissioner Frank Strada have filed a Response (Doc. No. 17), and Nichols has filed a Reply (Doc. No. 29). The defendants have filed a Partial Motion to Dismiss the Amended Complaint (Doc. No. 21), to which Nichols has filed a Response (Doc. No. 25). Finally, Nichols has filed a Motion to Voluntarily Dismiss Claims G, H, and I (Doc. No. 31).

On August 11, 2023, the Magistrate Judge issued a Report and Recommendation (Doc. No. 34), recommending that the court grant the defendants' motion in part, deny it in part, grant Nichols' request for voluntary dismissal, and dismiss Claims A, C, D, E, G, H, and I of Nichols' Amended Complaint, allowing Claims B, F, and J to proceed.[1] On August 16, 2023, the Magistrate Judge filed a second Report and Recommendation (Doc. No. 35), recommending that

---

[1] The court uses the designations of the claims set out in the defendants' Memorandum of Law of February 16, 2023 (Doc. No. 22 at 2–3.)

the court grant Nichols' request for preliminary injunction in part and deny it in part. Specifically, the Magistrate Judge concluded that Nichols was likely to succeed in his claim that most of the restrictions associated with Tennessee's sexual offender registry have been unconstitutionally applied to him in violation of the constitutional prohibition on *ex post facto* punishments, U.S. Const., art I, § 10, cl. 1. The Magistrate Judge, however, concluded that Nichols was unlikely to succeed with a challenge to some of the purely informational aspects of the registry, which existed, in some form, prior to his offenses. The magistrate judge therefore concluded that a broader injunction including those informational aspects of the registry is not necessary in this instance. (Doc. No. 25 at 5–6.)

Within fourteen days after being served with a report and recommendation any "party may serve and file specific written objections to [a magistrate judge's] proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). The district court must review *de novo* any portion of the report and recommendation "that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). However, the district court is not required to review—under a *de novo* or any other standard— those aspects of the report and recommendation to which no objection is made. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). The district court should adopt the magistrate judge's findings and rulings to which no specific objection is filed. *Id.* at 151.

Nichols has filed Objections to only one section of the August 11, 2023 Report and Recommendation. (Doc. No. 36 at 2.) In that section the Magistrate Judge recommended that the court hold that Nichols' challenge to Tennessee's imposition of a "community supervision for

2

Case 3:22-cv-01004    Document 40    Filed 09/19/23    Page 2 of 6 PageID #: 415

life" sentence on him is barred from consideration through 42 U.S.C. § 1983 by *Heck v. Humphrey*, 512 U.S. 477 (1994), because such a claim should be raised through a petition for habeas corpus. Nichols has made no other objections, nor have the defendants.[2]

On its face, § 1983 creates a cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Despite that broad language, however, courts have not construed § 1983 to apply to every situation in which such a deprivation has occurred. Rather, courts have held that, because § 1983 is a "general" statute, it is not available if Congress "passed a more specific act" intended to provide the "exclusive remedy available in a situation." *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973).

That rule poses an obstacle to plaintiffs who wish to rely on § 1983 to challenge their criminal convictions or punishments, because convictions and punishments tend to be reviewable pursuant to federal habeas corpus statutes. *See* 28 U.S.C. §§ 2241, 2254. In *Heck v. Humphrey,* the Supreme Court attempted to harmonize the statutes by holding that,

> in order to recover . . . for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order,

---

[2] The court notes, in particular, that Nichols has not objected to the Magistrate Judge's recommendation that the defendants be permitted to keep him on the sexual offender registry for purely informational purposes. The court therefore reaches no further conclusions about the appropriateness of that approach in this case. The court notes, however, that the diffuse responsibilities of law enforcement under the registry scheme raise potentially serious issues regarding the workability of such an approach. *See Does #1-9 v. Lee*, No. 3:21-CV-00590, 2023 WL 2335639, at *21 (M.D. Tenn. Mar. 2, 2023) (Trauger, J.) ("Keeping a person on the registry but treating him as otherwise removed from the Act's restrictions may *sound* simple enough, but that illusion of simplicity is difficult to maintain when one considers how many different law enforcement agencies—and even non-law enforcement entities such as schools and parks—are charged with enforcing the Act.").

> declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

512 U.S. at 486–87 (footnote omitted). "*Heck* applies whether the plaintiff seeks injunctive or monetary relief." *Ibrahim v. U.S. Parole Bd. Members*, 80 F. App'x 421, 422 (6th Cir. 2003) (citing *Heck,* 512 U.S. at 487; *Edwards v. Balisok*, 520 U.S. 641, 645 (1997)).

Tennessee law states that individuals convicted of certain crimes "shall receive a sentence of community supervision for life," to be imposed "[i]n addition to the punishment authorized by the specific statute prohibiting the conduct" for which the defendant was convicted. Tenn. Code Ann. § 39-13-524(a). Community supervision for life is, by the statute's own language, a "sentence" that is imposed "in addition to" other "punishment." *Id.* The Tennessee Supreme Court has agreed with this assessment, holding that "the imposition of a sentence of community supervision for life is punitive . . . ." *Ward v. State*, 315 S.W.3d 461, 473 (Tenn. 2010). The Sixth Circuit has followed suit and treated community supervision for life as a "criminal justice sentence" for federal sentencing purposes. *United States v. Barcus*, 892 F.3d 228, 234–35 (6th Cir. 2018). A challenge to the imposition of community supervision for life, therefore, involves an attempt to "render a . . . sentence invalid," potentially implicating *Heck*, 512 U.S. at 486.

Nichols argues that *Heck* does not apply to his community supervision claims because a community supervision for life sentence does not place an individual "in custody" and is, therefore, not reviewable through the writ of *habeas corpus*. *See Maleng v. Cook*, 490 U.S. 488, 490 (1989) (noting that habeas corpus relief is available only if a person is in custody). The Magistrate Judge addressed this argument and acknowledged that an exception to *Heck* might be available for the challenging of non-custodial sentences. (Doc. No. 34 at 7–8.) The Magistrate Judge concluded, however, that an individual serving a sentence of community supervision for

4

life is "in custody" for habeas purposes for the same reasons that an individual on parole is "in custody" for those purposes—because, while the individual is not "behind prison walls," he is still subject to an express criminal punishment that "significantly confine[s] and restrain[s] his freedom." *Jones v. Cunningham*, 371 U.S. 236, 243 (1963). This court agrees.

Nichols' arguments to the contrary are unconvincing. Nichols focuses on what he perceives as the unfairness of Tennessee's historical inconsistency in its acknowledgment that community supervision for life is punitive, but that argument, even if correct, would not permit this court to disregard *Heck*. The barriers created by *Heck* are entirely features of federal statute, not Tennessee law. In *Heck*, the Supreme Court made clear that it was basing its holding on the "potential overlap between" what the Court identified as the "two most fertile sources of federal-court prisoner litigation—the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983, and the federal habeas corpus statute, 28 U.S.C. § 2254." *Heck*, 512 U.S. at 480. It is the federal law question of how to draw the line between those two statutes—not the fairness or soundness of Tennessee's approach to related issues—that determines whether Nichols can rely on § 1983. Under existing law, Nichols' sentence falls on the side of the line reserved for claims cognizable through habeas corpus, not § 1983.

The court stresses that this holding should not be construed to suggest that no aspect of a community supervision sentence can ever be challenged pursuant to § 1983. *Heck* forbids § 1983 claims challenging the *validity* of a sentence, but a convicted person's "challenge to the *circumstances* of his" sentence, in contrast, "may be brought under § 1983." *Hill v. McDonough*, 547 U.S. 573, 579 (2006) (emphasis added) (citing *Muhammad v. Close*, 540 U.S. 749, 751 (2004)). Insofar as the Report & Recommendation could be read to suggest otherwise, that implication would be erroneous. Nichols, however, has not argued that his claims are permissible

5

for this reason, but merely because *Heck* should not, in his view, apply to a sentence such as his at all. Because that objection is not supported by law, it is hereby **OVERRULED**.

For the foregoing reasons, the Report and Recommendation of August 11, 2023 (Doc. No. 34) and Report and Recommendation of August 16, 2023 are hereby **ACCEPTED**. Nichols' Motion for Preliminary Injunction (Doc. No. 2) and Motion to Voluntarily Dismiss Claims G, H, and I (Doc. No. 31) are hereby **GRANTED**, and the defendants' Partial Motion to Dismiss the Amended Complaint (Doc. No. 21) is hereby **GRANTED** in part and **DENIED** in part. Claims A, C, D, E, G, H, and I are hereby **DISMISSED**. It is hereby **ORDERED** that the defendants shall not enforce any provision of the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Monitoring Act, Tenn. Code Ann. § 40-39-201 *et seq.*, against Nichols, with the exception that the defendants are not required to remove Nichols' information from the registry itself. The defendants are **ORDERED** to take all reasonable steps available to them to ensure that Nichols is not mistakenly treated as subject to the restrictions of the Act by any other Tennessee law enforcement entity.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge